UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES PIPER, et al.,

                  Plaintiffs,

        v.

CITY OF ELMIRA, et al.,

                  Defendants.

_____

<u>DECISION & ORDER</u>

10-CV-6005P

## <u>PRELIMINARY STATEMENT</u>

James Piper, Joseph Piper, Carol Piper and Donald Piper (collectively, "plaintiffs") have initiated this action against the City of Elmira (the "City"), its police department and the following individual police officers:  Scott Drake, III ("Drake"), Michael Marrone ("Marrone"), Paul Mustico ("Mustico"), John Perrigo ("Perrigo"), Benjamin Buck ("Buck"), Michael Suey ("Suey"), Kristen Thorne ("Thorne"), Alfred Chandanais ("Chandanais"), Anthony Alvernaz[1] ("Alvernaz") and William Solt, III ("Solt").  (Docket # 1). Plaintiffs have asserted constitutional claims under 42 U.S.C. § 1983 and state law claims arising from events on January 1, 2009, that resulted in Joseph Piper's arrest.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have a United States magistrate judge conduct all further proceedings in this case, including the entry of final judgment.  (Docket # 8).  Currently before the Court is defendants' motion for summary

_____

[1]  The complaint refers to Anthony *Alvarez*, although it appears that this officer's last name is *Alvernaz*. Accordingly, the Court will refer to him as Alvernaz.

judgment.  (Docket # 62).  For the reasons discussed below, defendants' motion is granted in part
and denied in part.


## __Defendants' Motion for Summary Judgment__

Defendants seek summary judgment dismissing the complaint in its entirety.
First, defendants contend that Joseph Piper's false arrest claim asserted in the seventh cause of
action is barred by his conviction for resisting arrest.  (Docket # 63-27 at 2-3).  Defendants
further argue that the claim is time-barred in any event, as are plaintiffs' other state law
intentional tort claims asserted in the first and fifth causes of action.  (*Id.* at 3-4).  In addition,
defendants maintain that they are entitled to judgment on the negligent supervision and training
claims against the City, the Elmira Police Department and Drake asserted in the fourth cause of
action because plaintiffs have failed to establish the existence of any municipal policy or
practice.  (*Id.* at 9-10).

Defendants also contend that they are entitled to qualified immunity on plaintiffs'
excessive use of force claims asserted in the second and sixth causes of action on the grounds
that the force used by the officers was reasonable under the circumstances.  (*Id.* at 4-7).  Finally,
defendants urge dismissal of the failure to intervene claim alleged in the third cause of action,
contending that plaintiffs are unable to raise a triable issue of fact that any individual defendant
had actual knowledge that excessive force was used by any of the other officers that evening.
(*Id.* at 8).

Plaintiffs maintain that genuine issues of material fact preclude summary
judgment.  (Docket # 65).  With respect to the second and sixth causes of action, plaintiffs argue

that factual disputes exist regarding the circumstances confronting the officers and that those disputes prevent a finding that the officers' conduct was reasonable under the circumstances. (*Id.* at 4). Further, plaintiffs contend that the force used by the officers was excessive and unreasonable and that they suffered resulting emotional distress. (*Id.* at 5). For the same reasons, plaintiffs assert that the third cause of action for failure to intervene should not be dismissed. (*Id.* at 6-7).

### A.    **Factual Background**

The following facts are undisputed except where otherwise noted.[2] Beginning on December 31, 2008 and continuing into the early morning hours of January 1, 2009, approximately twenty to thirty individuals attended a party at 317 East Miller Street, Elmira, New York. (Docket ## 62-1 at ¶¶ 1-2; 65-11 at ¶¶ 1-3). Plaintiffs lived next door at 319 East Miller Street. (Docket # 62-1 at ¶ 3). Many, but not all, of the attendees consumed alcohol, and some of them were under twenty-one. (*Id.* at ¶ 7; Docket # 65-11 at ¶ 2). Joseph and Donald Piper attended the party; their parents, Carol and James, were at their residence next door. (Docket # 62-1 at ¶¶ 2-3). Joseph Piper, who was twenty at the time, consumed approximately six beers during the two hours preceding the officers' arrival that evening. (*Id.* at ¶ 4).

---

[2] In opposing defendants' motion for summary judgment, plaintiffs have not complied with this district's Local Rules. Those rules require a party opposing summary judgment to "include a response to each numbered paragraph in the moving party's [S]tatement [of Material Facts], in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to the tried." W.D.N.Y. Local Rule 56(a)(2). Although plaintiffs have submitted a Counter-Statement of Material Facts, they have not responded to all the material facts asserted in defendants' Statement of Material Facts. Accordingly, as the rules provide, those statements that have not been specifically controverted will be deemed admitted. One example is defendants' assertion in paragraph 64 of their Statement that plaintiff Carol Piper suffered no physical injury. (*See* Docket # 62-1 at ¶ 64).

At some point during the evening, various of the partygoers were involved in an altercation with individuals attending an event at a house across the street. (Docket ## 62-1 at ¶ 5; 65-11 at ¶¶ 5-8). Plaintiffs contend that the altercation was a "verbal, nonviolent argument" involving approximately ten people from the party at 317 East Miller Street. (Docket # 65-11 at ¶¶ 5-6). According to plaintiffs, Joseph Piper was helpful in defusing the argument, and the incident concluded before the police officers arrived. (*Id.* at ¶¶ 7-8, 10). Plaintiffs allege that the police arrived without lights or sirens activated and, at the time of their arrival, no dispute was occurring inside or outside of 317 East Miller Street. (*Id.* at ¶¶ 9-11).

According to defendants, the altercation in the street was a "heated confrontation" involving approximately twenty to thirty individuals. (Docket # 62-1 at ¶ 5). Defendants contend that witnesses described the scene as "chaotic" and "frenzied" and identified Joseph Piper as an "instigating figure" in the altercation. (*Id.* at ¶¶ 15-18). When the officers arrived on the scene, many of the individuals who had been outside went inside 317 East Miller Street. (*Id.* at ¶ 6).

All parties agree that some of the officers entered 317 East Miller Street through the side door with the consent of the owner. (*Id.* at ¶¶ 7, 31; Docket # 65-11 at ¶¶ 12-13). Plaintiffs characterize the occupants of 317 East Miller Street as calm.[3] (Docket # 65-11 at ¶¶ 11, 20). Defendants allege that when they entered the house, they encountered approximately twenty-four young people, most of whom appeared to have consumed alcohol that evening and

---

[3] In support of this characterization, plaintiffs cite the testimony of Alvernaz. The cited testimony, however, was simply that there was no loud music emanating from the house and that after he searched the second floor, he returned to the kitchen, but was not drawn to that location by any noise. (Def. Ex. H at 36, 42). Nonetheless, some of the affidavits submitted by plaintiffs on this motion assert that the atmosphere was calm and the partygoers were acting responsibly when the officers arrived. (Pl. Exs. A, B, D, E).

some of whom were "confrontational" with the officers.  (Docket # 62-1 at ¶¶ 7, 8, 42).  The

officers began to investigate the allegations of the street fight, as well as the possibility of

underage drinking.  (*Id.* at ¶ 31).

      **1.**    **Joseph Piper**

      The parties agree that Joseph Piper ("Joseph") encountered several officers on the

staircase between the kitchen and the basement of the residence.  (Docket ## 62-1 ¶ 10; 65-11 at

¶ 23).  The staircase had a landing halfway between the basement and the kitchen that was

connected to a door that opened to the driveway located on the side of the house.  (*Id.*).  The

parties disagree about what happened on the staircase.

      According to defendants, Officers Marrone and Alvernaz were on or near the

landing discussing whether they should break up the party by instructing the attendees to leave.

(Docket # 62-1 at ¶¶ 43-44 and Defendant's Exhibit ("Def. Ex.") H at 65-71, 105-107 ).  At that

time, an individual named Leslieann Corter attempted to enter the house through the side door

leading to the landing.  (*Id.*).  Alvernaz testified that he directed her not to come into the house,

but to wait outside because everyone would soon be leaving.  (*Id.*).  According to defendants, as

Alvernaz was closing the door, Joseph Piper came down the stairs, bumped into Alvernaz's back,

told Corter that she did not need to heed the officer's instructions and attempted to force open the

door and pull Corter into the residence.  (*Id.*).  According to Alvernaz, the door, which opened

inward onto the landing, struck him.  (*Id.*).  At that point, Alvernaz decided to arrest Joseph.

(*Id.*).

      Defendants allege that Alvernaz turned around, grabbed Joseph's arm and

attempted to take him to the ground in order to arrest him.  (Docket # 62-1 at ¶ 45 and Def. Ex. H

at 18, 74-75, 107-09).  Alvernaz was successful in forcing Joseph into a face-down position on

the staircase but, despite assistance from Marrone, was unable to place him in handcuffs.  (*Id.*).

According to defendants, Joseph was struggling by "throw[ing] his elbows," "flailing" his arm,

"violently" thrashing his body and tensing his muscles.  (*Id.*).  At that point, Officer Perrigo, who

had been in the kitchen, came down the stairs to assist Marrone and Alvernaz.  (Docket # 62-1 at

¶¶ 11, 48 and Def. Ex. H at 18-21).  Perrigo deployed his taser three times to "drive stun" Joseph

into submission.  (*Id.*).  At that point, Joseph was handcuffed and escorted by Marrone out the

side door of the residence and into a police vehicle.  (Docket # 62-1 at ¶¶ 48, 53).

Plaintiffs allege that Joseph approached the landing in order to open the door for

an individual named Katrina Cramner.  (Docket # 65-11 at ¶¶ 23-25 and Def. Ex. K at 47-48,

60-61).  Joseph contends that it was Marrone, not Alvernaz, who refused to let Cramner enter the

premises.  (*Id.*).  Plaintiffs deny that Joseph struck Marrone with the door.  (Docket # 65-11 at

¶ 17).  According to them, as Marrone attempted to shut the door, Joseph stepped back to allow

Marrone to close the door.  (*Id.* at ¶ 25).  As Joseph stepped back, Alvernaz grabbed him and

forced him to the stairs.  (Docket # 65-11 at ¶¶ 26-31 and Def. Ex. K at 47-48, 60-61).  Plaintiffs

maintain that Joseph did not resist arrest and attempted to comply with the officers' instructions

to place his hands behind his back, but was unable to do so because his hands were pinned

underneath his body.  (*Id.*).  According to plaintiffs, when Perrigo deployed the taser, Joseph was

already pinned to the stairs, with both legs and one of his hands secured by the officers.  (Docket

# 65-11 at ¶¶ 32-35 and Plaintiff's Exhibit ("Pl. Ex.") F at 91, 95-96).

Plaintiffs contend that as Marrone escorted Joseph from the residence, Marrone's

faster pace caused Joseph to slip and fall on the pavement and he dragged Joseph the rest of the

way to the police vehicle.  (Docket # 65-11 at ¶¶ 35-38 and Def. Ex. K at 66).  Defendants do not

dispute that Joseph fell – either because he slipped on the ice or continued to struggle – and was

dragged to the police car.  (Docket # 62-1 at ¶¶ 53-54).

Joseph maintains that he sustained physical injuries, including bumps and bruises

on his chest and back and a sprained ankle, as a result of the incident.  (Docket # 65-11 at

¶¶ 42-43).  In addition, Joseph alleges that he suffered emotional distress that adversely affected

his relationship with his parents.  (*Id.* at ¶ 41).

Joseph Piper was convicted of resisting arrest.  (Docket # 62-1 at ¶ 46 and

Def. Ex. PP).

### 2.   **Donald Piper**

Defendants' Statement of Material Facts contains the following factual assertions

with respect to Donald Piper ("Donald").  Donald was in the basement of 317 East Miller Street

when the officers arrived at the residence.  (Docket # 62-1 at ¶ 30).  He and other partygoers were

instructed not to leave until the officers checked their identifications and completed their inquiry.

(*Id.* at ¶ 31).  Despite alleging in the complaint that he was pushed down the basement stairs and

fell on his back, Donald testified that he was pushed backwards by an officer after asking a

second time if he could leave, but was caught by another officer.  (*Id.* at ¶ 32 and Def. Exs. E at

9, M at 17-29).  Donald walked down the remaining steps into the basement where he was

instructed by an unidentified officer to place his hands on a sink and to spread his legs.  (Docket

# 62-1 at ¶ 34 and Def. Ex. M at 25-28).  The officer stated that Donald's legs were not far

enough apart and kicked his legs farther apart.  (*Id.*).  The officer then searched Donald by

"pulling on [his] pants and shaking them."  (*Id.*).  Donald testified that he was not physically

injured in any way as a result of the incident and he did not receive treatment for any alleged emotional distress.  (*Id.*; Docket # 62-1 at ¶ 36).

Defendants' Statement of Material Facts also asserts that the record does not indicate "which individual police officer or police officers committed the alleged torts against Donald Piper." (Docket # 62-1 at ¶ 37).  Plaintiffs' Counter-Statement of Material Facts does not respond to or controvert that assertion; in fact, it contains no facts at all specifically relating to Donald.  (*See* Docket # 65-11).

### 3.    James and Carol Piper

Carol Piper ("Carol") and James Piper ("James") were awakened by Cramner, who entered their home to inform them that Joseph Piper was involved in an altercation with the police officers.  (Docket # 65-11 at ¶ 44 and Def. Exs. B at 21-23, L at 37-38).  Carol and James left their home and approached the side door of 317 East Miller Street.  (*Id.*).  According to plaintiffs, as Carol approached the door, an officer exiting the door screamed at her and pushed her.  (Docket # 65-11 at ¶¶ 45-46 and Def. Ex. L at 44).  The push did not cause Carol to fall, although it did cause her to lose her balance and to stumble several steps.  (Docket # 65-11 at ¶ 46 and Def. Ex. L at 50).  Within "seconds," officers exited the residence with Joseph in handcuffs.  (Docket # 65-11 at ¶¶ 46-47 and Def. Ex. L at 44-45).

According to plaintiffs, as Marrone and Perrigo were escorting Joseph, James asked them at least twice what Joseph had done to warrant his arrest and asked them to explain what "is going on here." (Docket # 65-11 at ¶¶ 47-48 and Def. Ex. J at 60-65).  James claims that the officers, using expletives, instructed him to be quiet and to back away from them.  (*Id.*).  James claims that he stepped back, turned and saw Joseph on the ground, being dragged in the

snow.  (*Id.*).  According to James, he said, "My God, you are dragging him in the snow," at which point somebody grabbed both of his arms.  (*Id.*).  He then felt four sensations on his chest, which he described as "hot electrical pinches."  (Def. Exs. B at 30, J at 64-65).  Carol testified that she observed a blue light hit James in his shoulder area.  (Docket # 65-11 at ¶ 48 and Def. Ex. L at 56-59).  At that time, Carol ran back to her own residence.  (*Id.*).

Defendants offer a different version, contending that there was no contact between James and the taser.  (Docket # 62-1 at ¶¶ 69-72).  According to defendants, James was "agitated" by his son's arrest and was restrained by an officer while other officers escorted Joseph to a police vehicle.  (*Id.*).  Defendants assert that in order to get James to comply with commands to stay away from his son, Mustico pointed his taser's red "laser sight" at James and Perrigo "spark tested" his taser approximately 6-12 inches from James.  (*Id.*; Docket # 62-3 at ¶¶ 17-18).  According to defendants, there was no contact between the taser spark and James.  (Docket # 62-3 at ¶ 17).

The parties dispute the course of events after Joseph Piper was arrested.  According to defendants, after Joseph's arrest, several of the partygoers congregated on the porch of plaintiffs' residence at 319 East Miller Street.  (Docket # 62-1 at ¶¶ 13-14, 59-60).  According to defendants, the individuals on the porch were "unruly," "scream[ed] obscenities" and refused to comply with the officers' instructions to go inside the residence or to calm down.  (*Id.*).  Defendants contend that several officers ascended the porch to arrest the individuals who continued to create a public disturbance.  (*Id.* at ¶¶ 60-63).  According to defendants, as the officers pushed through the crowd on the porch, Carol was pushed by an officer.  (*Id.*).  Three people on the porch were arrested.  (*Id.*).

By contrast, plaintiffs contend that the officers forced the party attendees onto the porch by "screaming profanities" and "physically pushing people." (Docket # 65-11 at ¶ 50). Plaintiffs deny that anyone swore at or interfered with the officers. (*Id.* at ¶ 51). According to plaintiffs, the officers then attempted to force the individuals inside plaintiffs' residence. (*Id.* at ¶ 52). At the time, Carol was standing in the doorway between the porch and her residence, and she observed Perrigo on the porch. (*Id.* at ¶ 53 and Def. Ex. L at 66-69).

Carol alleges that she told the officer that she did not want anyone entering her residence. (*Id.*). According to Carol, Perrigo responded by "grabb[ing] [her] by both [her] shoulders and thr[owing] [her] to the ground." (*Id.*). Carol testified that she began to fall and was caught by another individual, although her bottom touched the floor of the porch. (*Id.*).

James contends that he returned to his porch and observed Perrigo pushing Carol. (Docket # 65-11 at ¶ 54 and Def. Ex. J at 22-32). According to James, he moved to stand between Perrigo and Carol and asked the officer, "What the hell are you doing to my wife?" (*Id.*). At that point, James was forcefully pushed against the porch wall by another officer. (Docket # 65-11 at ¶ 54 and Def. Exs. B at 45-47, J at 22-32). According to James, the officer held him against the wall by applying force to his throat with either an object or the officer's forearm. (*Id.*).

Neither Carol nor James contend that they suffered any physical injuries as a result of the incident, although both allege they suffered emotional injuries. (Docket # 65-11 at ¶¶ 55-58 and Def. Exs. J at 46, L at 107-08).

B.     **Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reaching this determination, the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).  A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution . . . .  [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### 1.    State Law Claims

Plaintiffs' opposing papers do not address defendants' argument that they are entitled to judgment on the claims asserted in the first, fourth, fifth and seventh causes of action.  (Docket ## 62, 65).  During oral argument on the motion, plaintiffs' counsel conceded that judgment in favor of defendants was warranted on these claims.  I agree.  Accordingly, judgment shall be entered in favor of defendants dismissing the first, fourth, fifth and seventh causes of action.

### 2.    Levine's Expert Report

Defendants have submitted the report of their expert, Michael Levine ("Levine"), in support of the pending motion.  (Docket # 63-17).  Levine opines generally that the officers' conduct during their interactions with plaintiffs was objectively reasonable under the circumstances faced by the officers.  (*Id.* at 12-15, ¶¶ 2, 5, 6, 11).  His opinions, however, rest upon defendants' version of the events.  For example, Levine opines that the use of a taser was appropriate given the "volatile and potentially deadly arrest situation" faced by the officers.  (*Id.* at 13, ¶ 2).  He further opines that the officers faced "extreme provocation" and that the techniques they used were reasonable given the "volatile situation," which posed a "risk of injury

to the officers and civilians involved." (*Id.* at 13, ¶¶ 5-6).  As described in detail above, plaintiffs maintain that by the time the officers arrived, the situation had defused and that the individuals inside and outside of 317 East Miller Street were calm.  Because the opinions offered by Levine are premised upon disputed facts, they will not be considered in determining the pending summary judgment motion.[4]

### 3.   **Excessive Force Claims**

To establish a claim under Section 1983, a plaintiff must demonstrate that the challenged conduct (1) was "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  Section 1983 creates no substantive rights; instead, it provides a "procedure for redress for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  Here, no genuine dispute exists that the defendants were acting under color of state law.  Rather, the central inquiry is whether their actions violated plaintiffs' constitutional rights.

The second and sixth causes of action assert that defendants subjected plaintiffs to excessive force during the early morning hours of January 1, 2009.  Defendants argue that they are entitled to summary judgment dismissing these claims on the grounds that the amount of force used was reasonable under the circumstances.

Claims arising from the use of force during an arrest are judged by the "objective reasonableness" standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Determination of whether the amount of force used to seize someone was reasonable

---

[4]  This opinion does not address the admissibility at trial of Levine's testimony or report.

"requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests as stake." *Id.* at 396

(internal quotations omitted).

Where the claim arises outside the context of an arrest or a seizure by law

enforcement officials, allegations of excessive force are analyzed under the Due Process Clause

of the Fourteenth Amendment. *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998)

("outside the context of an arrest, a plaintiff may make claims of excessive force under § 1983

under the Due Process Clause of the Fourteenth Amendment"); *Tierney v. Davidson*, 133 F.3d

189, 199 (2d Cir. 1998) ("[p]laintiffs do not assert that they were arrested or seized, and therefore

these claims fall outside of the Fourth Amendment protections . . . and are governed instead by

the Due Process Clause of the Fourteenth Amendment") (internal citations omitted); *Harrell v.

Cnty. of Nassau*, 2013 WL 5439137, *6 (E.D.N.Y. 2013) ("[s]ince [p]laintiff was not arrested

and was not seized, [p]laintiff's excessive force claim is appropriately analyzed under the

substantive due process standard").  "[A] Fourteenth Amendment substantive due process

approach . . . requires a showing that the amount of force used was such as to offend even

hardened sensibilities or brutal and offensive to human dignity."  *Schy v. Vermont*, 2 F. App'x

101, 102 (2d Cir. 2001) (internal quotations omitted).  To inform this determination, a court

should apply "a four-part test . . . to determine whether the force is excessive under the

Fourteenth Amendment, *i.e.*, whether it shocks the conscience":

> (1) the need for the application of force, (2) the relationship
> between the need and the amount of force that was used, (3) the
> extent of the injury inflicted, and (4) whether force was applied in a
> good faith effort to maintain or restore discipline or maliciously
> and sadistically for the very purpose of causing harm.

*Tierney v. Davidson*, 133 F.3d at 199 (internal quotation omitted).

Courts have long recognized that a police officer's right to make an arrest or investigatory stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. at 396. "Because [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal citation and quotations omitted). A police officer's application of force is excessive if it is objectively unreasonable "in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intent or motivation." *Id.* at 397.

Evaluation of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Burke v. Cicero Police Dep't*, 2010 WL 1235411, *9 (N.D.N.Y. 2010).

For a claim of excessive force to be actionable, a plaintiff must demonstrate that it was "objectively sufficiently serious or harmful." *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999). Stated another way, "the force used by a defendant [generally] must be more than *de minimis* in order for a plaintiff's claim to be actionable." *Bell v. Chemung Cnty.*, 2006 WL

15

839413, *3 (W.D.N.Y. 2006) (citing *Graham*, 490 U.S. at 397; *Romano v. Howarth*, 998 F.2d

101, 105 (2d Cir. 1993) (a *de minimis* use of force will rarely suffice to state a constitutional

claim)).  As the Supreme Court has acknowledged, "Not every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

*Graham*, 490 U.S. at 396 (internal citation omitted); *see also Schy v. Vermont*, 2 F. App'x at 102

(under Fourteenth Amendment Due Process standard, "not every infliction of pain reaches the

level of a constitutional violation").

   At the same time, "[u]nder the law, police are not permitted to use any degree of

force in all instances – in some circumstances, no use of force is reasonable because none is

required."  *Weather v. City of Mount Vernon*, 2011 WL 1046165, *11 (S.D.N.Y. 2011), *aff'd*,

474 F. App'x 821 (2d Cir. 2012).  Accordingly, the actions of the officers must be judged against

the purported justification for the use of force under the circumstances and a defendant may be

liable if "the force used exceeded the force needed for the factual circumstances."  *Graham v.

City of New York*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013).  This is particularly true where the

circumstances of the encounter suggest that the officer "gratuitously inflict[s] pain in a manner

that [is] not a reasonable response to the circumstances."  *Phelan v. Sullivan*, 541 F. App'x 21,

24 (2d Cir. 2013) (alterations in original) (quoting *Amnesty Am. v. Town of W. Hartford*, 361

F.3d 113, 124 (2d Cir. 2004)); *Lemmo v. McKoy*, 2011 WL 843974, *6 (E.D.N.Y. 2011)

("although the *Graham* test does not consider the subjective intent of the officer(s) per se, . . .

[the] intentional, gratuitous uses of force that are not required to subdue an individual likely fail

the *Graham* objective unreasonableness test").

Further, although the "absence of any injury, however slight or fleeting" is an indication that the force used was *de minimis*, *Jennejahn v. Vill. of Avon*, 575 F. Supp. 2d 473, 480-81 (W.D.N.Y. 2008); *see Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) ("[d]e minimis injury can serve as conclusive evidence that de minimis force was used"), the absence of a serious injury is not dispositive of the claim, *see Davenport v. Cnty. of Suffolk*, 2007 WL 608125, *10 (E.D.N.Y. 2007) ("a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable"); *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) ("the Second [C]ircuit has indicated that a very minimal injury is sufficient to trigger potential liability [for excessive force]").

### a.   **Joseph and James Piper**

Joseph Piper's allegations regarding the amount of force used by Marrone, Alvernaz and Perrigo during his arrest are sufficient to create genuine issues of material fact as to the objective reasonableness of the force used.  According to Joseph, in attempting to arrest him, the officers forcefully pushed his body into the stairs and deployed a taser to stun him three times.  According to plaintiffs, Joseph's hands were pinned underneath his body, preventing him from placing his hands behind his back.[5]  After being removed from the house in handcuffs,

---

[5] During oral argument, counsel for defendants asserted that Joseph Piper is precluded from disputing that he did not resist arrest because he is bound by the jury's factual findings that he did resist arrest when it convicted him of resisting arrest.  Although the doctrine of collateral estoppel in certain circumstances may preclude an individual who was convicted of resisting arrest from asserting a claim of excessive force in a subsequent civil action, the party seeking to invoke the doctrine bears a heavy burden of establishing the doctrine's applicability.  *See Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("a prior conviction for resisting arrest *may* preclude a subsequent excessive force claim"); *see also Hardy v. Plante*, 2009 WL 249787, *2 (N.D.N.Y. 2009) ("[plaintiff's] prior conviction for resisting arrest precludes him from arguing that he fully cooperated with [d]efendants during the altercation").  "[B]ecause resistance to arrest 'does not give the officer license to use force without limit' in response, 'there is no inherent conflict between a conviction for resisting arrest ... and a finding that the police officers used excessive force in effectuating [that] arrest." *Id.* (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)).  Instead, a determination of the collateral estoppel effect of the conviction on Joseph's excessive force claim, if any, "requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence

Joseph fell to the driveway and was dragged to the police vehicle.   These allegations are

sufficient to withstand a motion for summary judgment.   *See, e.g.*, *Breen v. Garrison*, 169 F.3d

152, 153 (2d Cir. 1999) (summary judgment inappropriate where parties' factual recitations

differed regarding the arrest and the amount of force used); *Hodge v. Vill. of Southampton*, 838

F. Supp. 2d 67, 75-76 (E.D.N.Y. 2012) (summary judgment not warranted where plaintiff's

evidence, accepted as true and "drawing all reasonable inferences in plaintiff's favor," created

issue of fact whether officer used excessive force); *Benson v. Yaeger*, 2009 WL 1584324, *5-6

(W.D.N.Y. 2009) (disputed facts regarding amount of force used by officer precluded summary

judgment on excessive force claim brought by individual who had been convicted of resisting

arrest); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 342-43 (E.D.N.Y. 2006) (allegations

that officers continued to use force after plaintiff had been subdued precluded summary

judgment) (collecting cases).

       I reach the same conclusion with respect to James Piper's allegations that he was

improperly tased.   According to James, he asked the officers why his son was being arrested and

complied with their instructions to step back.   James contends that despite his compliant

behavior, he was tased in the driveway.   Defendants contend that although Mustico aimed his red

laser at James and Perrigo conducted a "spark test" in James's general direction, no contact

actually occurred between the taser and James.   I conclude that James's assertion that he felt four

---

submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support
a final judgment on the merits."   *Sullivan v. Gagnier*, 225 F.3d at 166.  Although defendants submitted portions of
the trial testimony from the state criminal proceedings in support of their motion, they did not submit the full record
and, in any event, have not raised the issue in their brief.  The question of the preclusive effect, if any, of Joseph's
conviction on his excessive force claim is therefore not properly before this Court on this motion.  *See In re Monster
Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("[t]his argument was raised for the first time at
oral argument and so was waived in terms of this motion").

"hot electrical pinches" on his chest raises a sufficient factual dispute to warrant denial of summary judgment. *See Greenfield v. Tomaine*, 2011 WL 2714221, *5 (S.D.N.Y.) ("for the [c]ourt to accept this argument, however, it would need to conclude that [p]laintiff's rendition of events . . . is untrue and that the information set forth in the Taser Use Report is true[;] [d]efendant's argument must fail because, at this stage of the litigation, the [c]ourt must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion"), *report and recommendation adopted*, 2011 WL 2714219 (S.D.N.Y. 2011); *Towsley v. Frank*, 2010 WL 5394837, *10 (D. Vt. 2010) (denying summary judgment on excessive force claim because factual dispute existed as to whether plaintiff was resisting arrest at the time the taser was deployed and jury could conclude that use of taser when plaintiff was not resisting was not reasonable).[6]  Finally, the fact that James did not suffer any serious injury as result of the use of the taser does not entitle defendants to judgment as a matter of law. *See Read v. Town of Suffern Police Dep't*, 2013 WL 3193413, *8 (S.D.N.Y. 2013) (denying summary judgment where plaintiff failed to establish that he sustained any injuries because "it is the officer's unreasonable conduct, and not the injuries that result, which is of critical importance[;] . . . a taser to the back is not a non-serious or trivial use of force akin to a shove; rather it is a serious intrusion into the core of the interests protected") (internal quotations omitted).

---

[6]  The cited cases analyze the issue under the Fourth Amendment.  Whether James's excessive force claims are properly analyzed under the Fourth Amendment, *see Zadrowski v. Town of Plainville*, 2013 WL 5435491, *3 (D. Conn. 2013) (suggesting Fourth Amendment analysis would apply), or the Fourteenth Amendment, *see Webster v. City of New York*, 333 F. Supp. 2d 184, 196 (S.D.N.Y. 2004) (suggesting Fourteenth Amendment analysis would apply), the factual dispute regarding whether any use of force against James was necessary under the circumstances precludes summary judgment.  *See Harrell v. Cnty. of Nassau*, 2013 WL 5439137 at *10 (denying summary judgment on excessive force claim under Fourteenth amendment because "[w]hether [p]laintiff was punched and the officer's motivation for punching [p]laintiff are issues to be decided by a jury").

The existence of factual disputes precluding summary resolution of Joseph's and James's excessive force claims also precludes a finding that the officers are entitled to qualified immunity on those claims. "The reasonableness of a police officer's conduct is at issue in both a Fourth Amendment excessive force analysis as well as step two of the qualified immunity test." *Benson v. Yaeger*, 2009 WL 1584324 at *6. Thus, in excessive force cases, the qualified immunity and Fourth Amendment analyses often overlap and present a single question: "[w]hether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful." *Id.* (quoting *Pub. Adm'r of Queen Cnty. ex rel. Estate & Beneficiaries of Guzman v. City of New York*, 2009 WL 498976, *5 (S.D.N.Y. 2009)). In this case, my determination that issues of material fact exist as to the reasonableness of the officers' use of force justifies denial of summary judgment on the grounds of qualified immunity. *See*, *e.g.*, *Breen v. Garrison*, 169 F.3d at 153 (issues of fact on reasonableness of force used preclude summary judgment on defense of qualified immunity); *Harrell*, 2013 WL 5439137 at *12 ("[v]iewing the facts in the light most favorable to [p]laintiff, the offending officer is not entitled to qualified immunity because there are genuine disputes of material fact regarding whether the officer acted reasonably [under the Fourteenth Amendment] in employing the type of force used against [p]laintiff under these circumstances"); *Burke v. Cicero Police Dep't*, 2010 WL 1235411 at *11 (conclusion that issues of fact preclude summary judgment on excessive force claims also precludes summary judgment on qualified immunity grounds); *Ostroski v. Town of Southold*, 443 F. Supp. 2d at 343 (defendants not entitled to summary judgment on qualified immunity grounds where issues of fact exist precluding summary judgment on excessive force claim; "[i]f the jury determines that the plaintiff's account of events

is accurate, this case does not involve 'the hazy border between excessive and acceptable force'")
(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

A different conclusion is compelled with respect to James's allegations that an
unidentified officer used excessive force in pinning him against his residence by applying force
to his neck.  Despite being afforded substantial time to conduct discovery, James has not
identified the officer who allegedly committed this act.  Defendants are thus entitled to summary
judgment dismissing this portion of James's excessive force and failure to intervene claims.  *See*
*Sheikh v. Morales*, 2006 WL 2223943, *4 (D. Conn. 2006) (granting summary judgment
dismissing excessive force claim where plaintiff, despite having opportunity for discovery, failed
to identify which officer engaged in conduct at issue; thus, "there is no rational basis for a jury to
choose which of the named defendants is responsible for the conduct"); *Universal Calvary*
*Church v. City of New York*, 2000 WL 1538019, *16-20 (S.D.N.Y. 2000) (granting summary
judgment dismissing excessive force and failure to intervene claims on the grounds that "mere
presence at the site of a melee involving hundreds of people is not evidence of personal
involvement[;] . . . [w]ithout any evidence linking any of the [d]efendants to the use of force in
any way, this [c]ourt cannot allow the charge to go to trial when the [d]efendants are being held
personally liable for constitutional violations"); *see also Rasmussen v. City of New York*, 766
F. Supp. 2d 399, 412 (E.D.N.Y. 2011) ("[i]t is one thing to identify by name three officers who
were in the room and sue them despite not knowing which ones undertook to beat a plaintiff and
which ones failed to prevent the beating[;] . . . [i]t is another matter entirely . . . to sue some
[officers] by name and then assert claims against unnamed defendants, and expect to receive a
verdict and judgment against the named officers based on what John Doe allegedly did"); *Cosby*

*v. City of White Plains*, 2007 WL 853203, *4 (S.D.N.Y. 2007) ("plaintiff had ample time to conduct discovery to identify the police officers responsible for his alleged injuries; discovery is now complete and plaintiff fails to identify any additional defendants[;] [n]or does plaintiff assert that additional discovery or trial will reveal these defendants' identities").

Accordingly, defendants' motion for summary judgment dismissing the excessive force claims asserted by Joseph and James in the second and sixth causes of action is denied except as to that portion of James's claim that seeks to impose liability for the alleged use of force against him on the porch.

### b.    Donald Piper

As an initial matter, I conclude that Donald Piper's excessive force claim is appropriately analyzed under the Fourth Amendment considering the allegation that Donald was told that he could not leave the residence. *See Barlow v. Male Geneva Police Officer Who Arrested Me on January 2005*, 434 F. App'x 22, 26-27 (2d Cir. 2011) ("[p]hysical restraint or an assertion of authority to restrain a person's freedom of movement by law enforcement officers would, in most instances, constitute a seizure[;] . . . [t]he intent that counts under the Fourth Amendment is the intent that has been conveyed to the person confronted"). On the record before me, I find that Donald has not raised a triable issue of fact with respect to his excessive force and failure to intervene claims. First, defendants maintain that the record does not indicate which officer committed the challenged conduct – the shove on the stairs or the kicking apart of his legs during the pat frisk.[7] (Docket # 62-1 at ¶ 37). Plaintiffs' complaint does not, nor do his

---

[7] Before this case was commenced, Donald evidently identified Marrone as the officer who pushed him on the stairs – an identification that appeared consistent with Marrone's testimony at Joseph's criminal trial. (Def. Exs. E at 9, H at 103). During his deposition in this case, however, Donald testified unequivocally that he could not

papers filed in opposition to this motion.  In fact, plaintiffs did not respond to or controvert that

particular assertion in their Counter-Statement.  Moreover, their Memorandum of Law, which

addresses the claims by the other three plaintiffs, does not even mention Donald, let alone

marshal or summarize any evidence in support of his claims.  Finally, at oral argument, despite

being asked by this Court to identify, among other things, the defendants against whom Donald's

causes of action are asserted, plaintiffs' counsel was unable to do so.  In sum, plaintiffs' failure to

respond to defendants' argument that Donald has not properly asserted a constitutional claim

against any specific individual officer itself justifies judgment in favor of defendants.

In any event, even if Donald could identify the officer who committed the

challenged acts, he has not adduced evidence from which a trier of fact could conclude that the

conduct was objectively sufficiently serious to rise to the level of a constitutional violation.  *See*

*Graham*, 490 U.S. at 396 ("[n]ot every push or shove, even if it may later seem unnecessary in

the peace of a judge's chambers, violates the Fourth Amendment"); *see also Jones v. City of*

*Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) ("[w]hile use of force against [plaintiff] may

have been unnecessary, the actual force used and the injury inflicted were both minor in nature"

where the officers "'slammed' [plaintiff] against the wall, kicked his legs apart, required him to

raise his arms above his head, and pulled his wallet from his pants").  As noted above,

"[a]lthough a showing of excessive force does not require proof of permanent injury," *Jennejahn*

*v. Vill. of Avon*, 575 F. Supp. 2d at 480-81, *de minimis* injuries may indicate that the amount of

---

identify the name of the officer who pushed him on the stairs and knows no witnesses who could.  (Def. Ex. M at
21).  For reasons not apparent in the record, plaintiffs apparently believe that they do not have a sufficient basis to
identify the officer who allegedly pushed Donald on the stairs, or perhaps they simply made a strategic decision not
to press Donald's claims in response to defendants' summary judgment motion.

force was likewise *de minimis*, *see Washpon v. Parr*, 561 F. Supp. 2d at 407.  In this case,

Donald testified that he suffered no physical injury as a result of the officers' actions.  (Def. Exs.

E at 31-32; M at 25, 66-67).

        Viewed in the light most favorable to Donald, I conclude the challenged conduct,

coupled with the absence of any resulting injuries, are of the type that courts have repeatedly

found insufficient to withstand summary judgment.  *See*, *e.g.*, *Nolin v. Isbell*, 207 F.3d 1253,

1257-58 (11th Cir. 2000) (remanding for entry of summary judgment for officer who caused

temporary bruising to plaintiff when he shoved plaintiff against a van, pressed his knee against

plaintiff's back and pushed plaintiff's head into the side of a van during the course of arrest);

*Tierney*, 133 F.3d at 199 (remanding for entry of summary judgment on Fourteenth Amendment

excessive force claims alleging that officers grabbed plaintiffs' arms to move them out of the

way or to restrain them and that officer hit plaintiff with nightstick because she joined an ongoing

struggle); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (affirming

summary judgment dismissing plaintiff's claims of excessive force during arrest where officer

pushed him against the wall of the police station and handcuffed him too tightly causing pain, but

no demonstrable permanent injuries); *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 661-63

(E.D.N.Y. 2008) (granting summary judgment dismissing excessive force claim where plaintiff

alleged that officer pushed him into the back of police vehicle causing him to strike his right

buttock on seatbelt receptacle, hyper-extended plaintiff's right leg and slammed the door causing

the door handle to strike plaintiff's leg) (collecting cases); *Jennejahn*, 575 F. Supp. 2d at 476,

481 (granting summary judgment dismissing excessive force claim where officer "grabbed

[plaintiff's] arm, spun him around, released his arm[,] . . . forcefully grabbed his shoulders[,] . . .

pushed [him] into a stove" and applied handcuffs too tightly); *Vogeler v. Colbath*, 2005 WL

2482549, *10 (S.D.N.Y. 2005) (granting summary judgment dismissing claims of excessive

force during arrest where plaintiffs' handcuffs were applied too tightly causing "minor

discomfort" and where plaintiffs were lifted off the ground by their arms as they were

handcuffed, but sustained no injury); *Bradley v. Vill. of Greenwood Lake*, 376 F. Supp. 2d 528,

535 & n.4 (S.D.N.Y. 2005) (granting summary judgment dismissing excessive force claim

against arresting officer who kicked plaintiff in the stomach causing temporary nausea and an

abdominal scratch); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 213-15 (E.D.N.Y. 2005)

(granting summary judgment dismissing excessive force claim where arresting officer caused

plaintiff to bump her head as she was placed in patrol car, resulting in a headache; left her in hot

patrol car for ten minutes, resulting in profuse sweating; and applied handcuffs too tightly,

resulting in bruising, swelling and unsubstantiated claims of nerve damage); *Roundtree v. City of

New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) (granting motion to dismiss excessive force

claims where arresting officer pushed plaintiff into a patrol car causing him emotional pain and

suffering; "to conclude that a 'push' that does not cause the slightest of physical injuries to the

plaintiff is nonetheless an actionable use of excessive force would be to hold that *any* physical

contact by an arresting officer with the arrested person is actionable . . . [and] would transform

the constitutional wrong of excessive force in arrest into the common law tort of battery"). *Cf.

Maxwell v. City of New York*, 380 F.3d 106, 108-10 (2d Cir. 2004) (reversing district court's

grant of summary judgment to defendants on excessive force claim where police officer shoved

plaintiff head first into the partition of a patrol car, resulting in pain and post-concussive

syndrome). Accordingly, defendants' motion for summary judgment as to Donald's excessive

force claims in the second and sixth cause of action, as well as his failure to intervene claims in the third cause of action, is granted.

c.  **Carol Piper**

By contrast to Donald's claim, Carol Piper's claim should be analyzed under the Fourteenth Amendment because she was not arrested or seized.  *See Harrell*, 2013 WL 5439137 at *6 ("[p]laintiff was not arrested and was not seized, [and thus] [p]laintiff's excessive force claim is appropriately analyzed under the substantive due process standard").

Carol's claims of excessive force concern two shoves:  the first by an unidentified officer as Joseph was being removed from 317 East Miller Street; the second by Perrigo when Carol was on her porch at 319 East Miller Street.  Defendants are entitled to judgment as to the first because Carol has not identified the defendant who allegedly shoved her.  Moreover, even if she could, the claim is not constitutionally cognizable under either the Fourteenth Amendment (or the Fourth Amendment).  The undisputed facts demonstrate that she was pushed out of the way seconds before Joseph was removed from the house.  Plaintiffs have pointed to no facts to show that this push, which caused Carol to stumble but not fall, was an objectively unreasonable use of force in connection with effectuating Joseph's arrest or was so egregious as to shock the conscience.  *Tierney*, 133 F.3d at 199 (remanding case for entry of summary judgment in favor of officers on plaintiff's Fourteenth Amendment excessive force claim where the officers' use of force was *de minimis*); *Bove v. New York City*, 1999 WL 595620, *6 (S.D.N.Y. 1999) (summary judgment appropriate where the force used "was at worst, *de minimis*, and insufficient to shock this Court's conscience").

Whether Carol's allegations concerning Perrigo's shove state a constitutionally cognizable claim is a much closer question.  Ultimately, I cannot conclude – as I must to grant defendants' motion – that no reasonable trier of fact could find for Carol if her version of events were credited.  Defendants maintain that Carol was shoved as officers were moving through an unruly and angry crowd gathered on her porch in order to arrest three people.  I agree with defendants that summary judgment would likely be warranted if those facts were undisputed.  They are not, however.  Plaintiffs contends that the crowd was not unruly, that it was the police who forced individuals onto Carol's porch and, most importantly, that Perrigo shoved her when she verbally objected to his attempt to force the partygoers inside her house.  Specifically, she testified as follows:

> Q.    (Pause)  Take me through, if you would, the circumstances surrounding how it is that you say Officer Perrigo threw you on the porch.
>
> A.    Okay.  When I say I was on my porch, I was in the doorway of my front porch.  And I heard some like stomping.  And I opened the door.  And there was Officer Perrigo, and I believe two other Officers.
>
> And I was in front of my door.  I put my hands up and said, "No, you can't.  You can't come in here.  You can't bring these kids.".  (Indicating)
>
> And he grabbed me by both my shoulders and threw me to the floor.
>
> Q.    You fell to the floor?
>
> A.    My bottom touched the floor.  Kristen Savino actually caught me.
>
> Q.    How did Kristen catch you?

> A.   She was standing next to me.  And Officer Perrigo
> grabbed me, and threw me, and I fell.  And she
> caught me by my underarms (indicating).

(Def. Ex. L at 66-67).  Judged under the four-part test applicable to Fourteenth Amendment

claims, I cannot find that Carol's claim fails as a matter of law.  While no dispute exists that she

suffered no physical injury, a jury could conceivably find that no force was appropriate in these

circumstances and that Perrigo's two-handed attempt to throw her to the floor was, at the very

least, gratuitous and unrelated to any legitimate law enforcement purpose.  The issue is not of

course how likely or remote such a determination may be; it is simply whether I can conclude

that no reasonable jury could reach a conclusion that the Fourteenth Amendment was violated.

*See Harwe v. Floyd*, 2011 WL 674024, *8 (D. Conn. 2011) ("the [c]ourt hesitantly concludes

after much careful deliberation that there is some possibility that a reasonable jury could find for

[plaintiff] on her excessive force claim[;] [t]he [law] do[es] not authorize this [c]ourt to ignore

that possibility, no matter how remote it may seem"), *appeal dismissed*, 468 F. App'x 87 (2d Cir.

2012).  On this record, I cannot, and summary judgment is thus denied as to that portion of

Carol's excessive force claim.  *See, e.g.*, *Masihuddin v. Gavin*, 2014 WL 1091157, *5 (S.D.N.Y.

2014) (denying summary judgment on Fourteenth Amendment excessive force claim where

plaintiff alleged that defendants knocked her to the floor when she opened the door resulting in

"relatively minor" injuries); *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 384 & n.6

(D. Conn. 2009) ("there are valid questions as to whether [defendant] was entitled to exercise any

force against [plaintiff] at all"; "the question of whether [defendant's] conduct 'shocks the

conscience' under the Fourteenth Amendment [should] be answered by a jury"); *Webster v. City

of New York*, 333 F. Supp. 2d at 198 (denying summary judgment on Fourteenth Amendment use

of force claim; "[u]nder [d]efendants' analysis, it was both necessary and appropriate for the police officers involved to prevent [plaintiff] from interfering with the arrest of [her daughter]; . . . [plaintiffs] claim, however, that those [d]efendants who threw [plaintiff] onto the police vehicle face-first did so in retaliation for her comments questioning what they were doing to [her daughter;] [i]n light of these varying accounts surrounding [d]efendants' use of force, genuine issues remain [precluding summary judgment]").  These material factual disputes also preclude a finding that Perrigo is protected from liability by the doctrine of qualified immunity.  *See* cases cited *supra* at 20-21.

Although I conclude Carol's excessive force claim stemming from the events taking place on her porch survives summary judgment, I reach a different conclusion with respect to her failure to intervene claim.  According to plaintiffs, two other officers were on the porch with Perrigo, although, as counsel for plaintiff conceded at oral argument, they are unable to identify the officers.  Carol's inability to identify any officers who were in a position to observe Perrigo's actions and intervene precludes her from proceeding to trial on a failure to intervene claim.

Accordingly, defendants' summary judgment motion as to Carol's excessive force claims is granted with respect to her allegation that she was shoved at 317 East Miller Street, as well as her failure to intervene claim, and denied with respect to her excessive force claim against Perrigo based on his alleged conduct at 319 East Miller Street.

4.      **Claims Against Drake, Buck, Suhey, Thorne, Chandanais, and Solt**

Defendants contend that Drake, Buck, Suhey, Thorne, Chandanais and Solt are entitled to summary judgment because plaintiffs have failed to allege that any of these defendants

either directly participated in the wrongful conduct or were in a position to observe and prevent any alleged excessive force by any other officers.  (Docket ## 62-1 at ¶ 79; 63-27 at 8).  As noted by defendants, at best plaintiffs have shown that the names of these officers were included on police reports relating to these events.  (Docket # 62-1 at ¶ 79).  Plaintiffs have not, however, adduced any evidence of the involvement or actions of these individual defendants.  Plaintiffs contend that their presence at the scene that evening is sufficient to defeat summary judgment. (Docket # 65 at 6-7).  Plaintiffs' position is contrary to applicable caselaw.

In order to hold an officer liable for excessive force, a plaintiff must adduce sufficient evidence to raise an issue of fact as to whether the officer was personally involved in the use of the claimed excessive force.  *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978)); *Smith v. P.O. Canine Dog Chas*, 2004 WL 2202564, *8 (S.D.N.Y. 2004).  A plaintiff may establish an officer's personal involvement through facts suggesting that the officer was either personally involved in the use of force or was present during the use of force and failed to intervene.  *Id.*  In adducing such facts, the "plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene."  *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd*, 426 F.3d 549 (2d Cir. 2005).  Yet, "the mere fact that [an] [o]fficer was present for the entire incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to prevent it."  *Rodriguez v. City of New York*, 2012 WL 1658303, *5 (S.D.N.Y. 2012).

Plaintiffs have not come forward with any evidence to raise a triable issue of fact that any of these individual officers participated in the acts of alleged excessive force or that they were in a position to intervene, yet failed to do so.  Indeed, plaintiffs' Statement of Material Facts is devoid of any specific allegations with respect to any of these individual defendants.  The incidents of alleged excessive force that have survived summary judgment occurred in different locations – inside 317 East Miller Street, in the driveway on the side of that residence and on the porch of 319 East Miller Street.  There is no evidence in the record before the Court as to the location of any of these officers at the scene, much less evidence that these officers were in a position from which they could have intervened during the challenged uses of force.  Accordingly, I conclude that defendants Drake, Buck, Suhey, Thorne, Chandanais and Solt are entitled to summary judgment dismissing all claims against them.  *See Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 222 (W.D.N.Y. 2012) (granting summary judgment to officers where plaintiff established their presence at the scene, but could not establish that they "witnessed the alleged abuse or had an opportunity to stop it"); *Smith v. P.O. Canine Dog Chas*, 2004 WL 2202564 at *10 ("[plaintiff] has presented no evidence from which a jury could conclude that [the officers] were in a position to prevent any harm from occurring[;] . . . [plaintiff] has proffered no evidence to suggest that these officers were in the basement or even in the house, at the time of the incident[,] . . . [n]or is there any indication that any of the named defendants would have known, or had reason to believe, that the alleged violation of constitutional rights was occurring").

5.      **Failure to Intervene Claims Against Perrigo, Mustico, Alvernaz and Marrone**

Finally, I turn to defendants' contention that they are entitled to summary judgment dismissing plaintiffs' remaining failure to intervene claims against Perrigo, Mustico, Alvernaz and Marrone on the grounds that plaintiffs have failed to raise a triable issue of fact that these officers were present during the alleged incidents of excessive force and failed to intervene.[8]  This argument lacks merit.  All parties agree that Perrigo, Alvernaz and Marrone participated in either the restraint or tasering of Joseph Piper.  Defendants have also conceded that Perrigo and Mustico were the officers who pointed their tasers at James Piper.  To withstand summary judgment, it is sufficient that plaintiffs have established that these officers were present during these incidents; they need not establish which officers used the challenged force and which allegedly failed to intervene.  *See Jeffreys v. Rossi*, 275 F. Supp. 2d at 474.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (**Docket # 62**) is **GRANTED in part and DENIED in part**.  The Clerk of the Court is directed to enter judgment in favor of the City of Elmira, the Elmira Police Department, Drake, Buck, Suhey, Thorne, Chandanais and Solt.  Defendants are entitled to summary judgment dismissing the claims asserted by Donald Piper, and the Clerk of the Court is direct to terminate Donald Piper as a plaintiff in this action.  Defendants are entitled to summary judgment as to those portions of

---

[8]  Defendants have not raised, and the Court does not reach, the question of whether the officers would have "had sufficient time to intercede or [would have been] capable of preventing the harm being caused."  *See Zadrowski v. Town of Plainville*, 2013 WL 5435491 at *4-5.

Carol's claim concerning an alleged shove at 317 East Miller Street and the failure to intervene claims asserted by Carol.  Defendants are entitled to summary judgment as to those portions of James's excessive force and failure to intervene claims involving actions on the porch of 319 East Miller Street.  Defendants are entitled to judgment dismissing the claims asserted by James, Joseph and Carol Piper asserted in the first, fourth, fifth, and seventh causes of action.

A trial date status conference will be held with the undersigned at 2310 U.S. Courthouse, 100 State Street, Rochester, New York on **May 14, 2014**, at **11:40 a.m.**

**IT IS SO ORDERED.**


<u>  s/Marian W. Payson  </u>
MARIAN W. PAYSON
United States Magistrate Judge


Dated: Rochester, New York
        March   28  , 2014